IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GAY WORTMAN, Plaintiff,

v.

CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, Defendant.

CIVIL ACTION NO. 9:13-1480-TLW-BM

**REPORT AND RECOMMENDATION**

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on February 22, 2006 (protective filing date), alleging disability as of October 1, 2003 due to bi-polar disorder, anxiety/depression, degenerative disc disease, scoliosis, arthritis, osteoarthritis, fibromyalgia, hip and shoulder bursitis, "dequervanis tenosynouit",[1] asthma, and hearing loss in her left ear. (R.pp. 119, 289-293, 322). Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on January 21, 2009.

[1]De Quervain's tenosynovitis is a painful condition affecting the tendons on the thumb side of the wrist. http://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/basics/definition/, Aug. 1, 2012.



(R.pp. 85-111). At the hearing, Plaintiff amended her disability onset date to September 22, 2005. (R.pp. 88, 385). Significantly, Plaintiff's last date insured for purposes of obtaining DIB is December 31, 2005. (R.pp. 308, 312, 318, 353, 376, 400). Therefore, in order to be entitled to DIB, Plaintiff was required to show that she became disabled between September 22 and December 31, 2005, a period of a little over three (3) months. Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005). See 20 C.F.R. § § 404.315(a)(1), 404.320(b)(2).

Following the hearing, the ALJ denied Plaintiff's claim in a decision issued March 24, 2009. (R.pp. 125-134). Plaintiff appealed this decision to the Appeals Council, which remanded the matter back to the ALJ for, inter alia, further consideration of the treating source opinion and to obtain evidence from a medical expert if warranted. (R.pp. 137-139). A second hearing was then held on December 8, 2010; (R.pp. 52-84); following which the ALJ again denied Plaintiff's claim in a decision issued March 11, 2011. (R.pp. 143-158). Plaintiff again appealed to the Appeals Council, and on July 9, 2012 the Appeals Council again remained the matter for further consideration of Plaintiff's Residual Functional Capacity (RFC) and to obtain supplemental evidence from a Vocational Expert, if warranted. The Appeals Council also directed that the remand be to a different ALJ. (R.pp. 160-161).

A third administrative hearing was then held on September 11, 2012. (R.pp. 33-51). On September 28, 2012, the ALJ issued a decision finding that Plaintiff was not disabled from September 22, 2005 through December 31, 2005, the applicable time period, and was therefore not entitled to DIB. (R.pp. 13-32). This time the Appeals Council denied Plaintiff's request for review, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5).





Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v.





Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was fifty-two (52) years old on her amended disability onset date, has a high school education with some college course work, and past relevant work experience as a retail sales clerk and companion. (R.pp. 25, 48, 55, 289, 330, 335). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevented her from engaging in all substantial gainful activity for which she was qualified by her age, education, experience and functional capacity, and which lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff did suffer from the "severe" impairments[2] of degenerative disc disease of the lumbar spine and depression during the applicable time period, thereby rendering her unable to perform her past relevant work, she nevertheless retained the RFC to perform a reduced range of light work[3] through the date she was last insured, and was therefore not entitled to disability benefits. (R.pp. 18, 21, 24-26).

Plaintiff asserts that in reaching this decision, the ALJ erred by rejecting the opinion of Plaintiff's treating psychiatrist, Dr. Peter Naylor, that her psychiatric condition met the criteria of

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).





Listing 12.04(C);[4] by giving too much weight to the conclusions of the state agency consultant; and by relying on the testimony of a Vocational Expert that Plaintiff could work with her impairments that was based on an improper hypothetical to the Vocational Expert. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

**I.**

**(Dr. Naylor's Opinion)**

Plaintiff first began seeing Dr Naylor on September 22, 2005 (her amended disability onset date), complaining of depression with related symptoms such as lack of motivation, excessive sleeping, and trouble concentrating, among others. On February 9, 2008 (over two years *after* Plaintiff's eligibility for DIB had expired), Dr. Naylor completed a Mental Impairment Questionnaire wherein he opined that Plaintiff was markedly restricted in her activities of daily living, social functioning, and with respect to concentration, persistence or pace, and that Plaintiff met the requirements of Listing 12.04(C). Dr. Naylor's conclusion that Plaintiff's mental impairment resulted in these "marked" limitations was notwithstanding the fact that Dr. Naylor also opined in that same questionnaire that Plaintiff had a GAF of only 65 on that date, indicating that Plaintiff had

---

[4]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).





only a mild impairment.[5] (R.pp. 1080-1083). In a subsequent letter dated July 22, 2008, Dr. Naylor wrote that the "marked" impairment referenced in his February 2008 assessment was "more representative of the difficulties [Plaintiff] has had over the course of [her] illness", and that the GAF score of 65 merely referred to her mental state at the moment he filled out the paperwork. (R.p. 1021). The ALJ gave Dr. Naylor's opinion little weight, however, finding that the severity of condition he opined to was not supported by the medical evidence of record, including Dr. Naylor's own clinical notes. (R.pp. 20-21). Substantial evidence supports the ALJ's decision to give little weight to this opinion. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)["When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)].

A claimant must meet *all* of a Listing's requirements to fall under the Listing. See Sullivan, 493 U.S. at 530 ["For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."]. To meet the requirements of Listing 12.04(C) [Affective Disorders], Plaintiff must have a

> [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work

---

[5]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF score of 65 indicates that only some mild symptoms of depression or difficulty in social or occupational settings are present. Simons v. Barnhart, No. 04-5021, 2004 WL 2633448, at **2 (4th Cir. Nov. 18, 2004).





activities, with symptoms or signs currently attenuated by medication of psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensation; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P.App. 1, § 12.04(C).

In his decision the ALJ found that, through the date last insured, there was no medically documented history of a chronic affective disorder over at least two years duration that had caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication of psychosocial support, with any of the three required subparts of the Listing. (R.p. 21). Plaintiff argues that the way the ALJ handled consideration of whether she met the requirements of Listing 12.04(C) constitutes reversible error because, although the ALJ set forth the criteria of paragraph C of the Listing, he failed to then make the requisite comparison analysis; made only a conclusory statement, without justification, that the paragraph C criteria were not met; and that the evidence of record actually supports Plaintiff's claim that her bipolar syndrome met the requirements of Listing 12.04 as it was an affective disorder of at least two years duration that had caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, together with a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual





to decompensate (i.e., the standard for § 12.04(C)(2)). Plaintiff's Brief, at pp. 6-7. The undersigned does not agree.

The ALJ did find in his decision that Plaintiff suffered from the severe impairment of depression, therefore meeting the initial requirement of Listing 12.04 that she have an affective disorder[6] that caused more than a minimal limitation of ability to do basic work activities. (R.p. 18). See Bowen, 482 U.S. at 140-142 [A severe impairment significantly limits a claimant's ability to do basic work activities]. Then, with respect to whether Plaintiff's affective disorder was at a level of severity to meet the requirements of subsection C, the ALJ first discussed the criteria of decompensation, finding that there was no evidence that Plaintiff had experienced episodes of decompensation which had been of extended duration.[7] (R.p. 20). The Defendant also correctly notes in his brief that Plaintiff's counsel even conceded at the September 2012 hearing that Plaintiff could not establish the episodes of decompensation that Dr. Naylor opined Plaintiff had had in his February 2008 opinion. (R.p. 38). Therefore, substantial evidence supports the ALJ's finding that Plaintiff did not meet the requirements of 12.04(C)(1).

With respect to having an inability to function outside of a highly supportive living arrangement (the criteria for § 12.04(C)(3)), the ALJ found that Plaintiff had only a mild restriction

[6]Affective disorders are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Pt. 404, Subpt. P.App. 1, § 12.04.

[7]As part of this discussion, the ALJ did note that Plaintiff had been hospitalized in 2007, but that this event had not occurred until after the expiration of her insured status. (R.pp. 20, 1023, 1138-1141). It is further noted that, upon her discharge from this hospital stay, Plaintiff was assigned a GAF score of 65, indicating the presence of only mild symptoms. (R.pp. 1138-1139).





in her activities of daily living, noting that she was able to care for her personal needs, perform a wide range of household chores, drive, and shop. See (R.pp. 359-362). The ALJ further determined that Plaintiff's difficulties in social functioning were only "mild to moderate", with the ALJ noting that prior to the expiration of her insured status, Plaintiff's medical records contained little clinical evidence of serious impairment, and she was consistently found to be alert and oriented. (R.pp. 20, 484, 485, 488, 490, 500, 506, 511, 517, 519, 522-523, 527-528, 566, 568-570, 575, 719, 721, 724, 726, 730, 742, 806, 814, 1005-1006, 1009). Indeed, Plaintiff does not herself make any real argument for her meeting the criteria of § 12.04(C)(3), focusing instead on the requirements for 12.04(C)(2). See, Plaintiff's Brief, pp. 6-11. Therefore, Plaintiff has failed to show the ALJ committed reversible error with respect to this finding. See Sullivan, 493 U.S. at 530 [Plaintiff has the burden of showing that her impairment matches a Listing]; see also Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.].

As for whether there was evidence of a residual disease process that had resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, in addition to noting that there was only one episode of decompensation cited in the record (which was *after* Plaintiff's eligibility for DIB had expired), the ALJ found that there was no support for Dr. Naylor's February 2008 opinion that Plaintiff had had marked limitations in her activities of daily living, social functioning, and with regard to concentration, persistence or pace during the relevant time period. (R.p. 24). Even Plaintiff's own counsel appeared to concede this opinion was not supported by the medical record. See (R.pp. 37-38). The ALJ further noted that Plaintiff's treatment notes from





Palmetto Primary Care during the relevant time period reflected that Plaintiff was consistently alert and oriented to time, place, and person, with no difficulty with speech or language; and that Plaintiff was able to engage in a range of activities of daily living and interact with others. (R.pp. 24, 360-363, 484, 485, 488, 490, 500, 506, 511, 517, 519, 522-523, 527-528, 566, 568-570, 575, 719, 721, 724, 726, 730, 742, 806, 814, 1005-1006, 1009). Dr. Naylor had himself assigned Plaintiff a GAF of only 65 in February 2008, further indicating that this had generally been her level of mental functioning for the past year. Additionally, his own treatment notes (in addition to being inconsistent, such as assigning Plaintiff a "marked" limitation in functioning even while also assigning her a GAF of 65, indicating the presence of only mild symptoms), generally reflect complaints made to him by the Plaintiff as opposed to significant clinical findings of his own, and simply do not reflect a level of impairment such that even a minimal increase in mental demands or change in the environment would be predicted to cause Plaintiff to decompensate. See generally, (R.p. 566-575); see also (R.pp. 19-20, 23-24, 47, 359-362) [Showing that during the relevant time period Plaintiff was able to engage in such activities as attend church regularly, talk on the phone, visit, play cards, shop with others, and drive a car]. Cf. Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ properly rejected physician's opinion that was based on the claimant's own subjective complaints]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms].

In sum, Plaintiff has failed to establish any reversible error in the ALJ's finding that she did not meet the requirements of Listing 12.04(C). See Sullivan, 493 U.S. at 530 [Plaintiff has the burden of showing that his impairment matches a Listing]; Carlson v. Shalala, 999 F.2d 180, 181





(7th Cir. 1993) [". . . What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; see also Blalock, 483 F.2d at 775 [it is the claimant who bears the burden of proving his disability]. This claim is without merit.

**II.**

**(Opinion of the State Agency Physician)**

Plaintiff also complains that, rather than relying on the opinion of Plaintiff's treating physician, Dr. Naylor, in reaching his decision, the ALJ instead relied on the opinion of the state agency physician, who had not examined the Plaintiff. This argument is without merit for several reasons.

First, for the reasons already discussed, supra, the ALJ quite properly discounted Dr. Naylor's opinion because it was internally inconsistent, concededly (even by Plaintiff's own counsel at the hearing) lacking in any objective support, and was contrary to the medical evidence as a whole. (R.pp. 20-21, 24). See Craig, 76 F.3d at 589-590 [Rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record].

Second, there is nothing improper about an ALJ relying on medical evidence supplied by a state agency physician when it is supported by the evidence of record. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]. Here, in August 2006 (shortly after





Plaintiff's eligibility for DIB had expired), Plaintiff's medical records were reviewed by state agency psychologist Dr. Mark Williams, who completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment. Dr. Williams concluded after a review of Plaintiff's medical records that Plaintiff's depression and anxiety did not meet the requirements of Listing 12.04, and resulted in only mild activities of daily living, and moderate difficulties in maintaining social functioning and with respect to concentration, persistent or pace, with no episodes of decompensation. As part of this finding, Dr. Williams determined that Plaintiff was not significantly limited in most areas of mental functioning. Dr. Williams also specifically noted that he had reviewed Dr. Naylor's medical records in reaching his conclusions. See generally, (R.pp. 880, 883, 890, 892, 894-896).

These findings are in accord with the findings of the ALJ, who concluded that Plaintiff had a mild restriction in her activities of daily living, mild to moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace, with no episodes of decompensation. (R.p. 20).[8] Smith, 795 F2d at 345 [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]. In any event, the ALJ does not even specifically refer to Dr. Williams' report in his decision, although he does indicate that he reviewed all of the evidence, including the opinion evidence, in reaching his conclusions. (R.pp. 16, 21-22). See Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009)[Noting well established principle of taking ALJ at his word when he indicates he considered all of the evidence]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence

---

[8]As previously noted, the one incident of decompensation noted in the record occurred in 2007, well after Plaintiff's eligibility for DIB had expired.





and resolve conflicts in that evidence]. Hence, the undersigned can find no reversible error in the decision with respect to this evidence. See also SSR 96-6p, 1996 WL 374180, at * 3 ["In appropriate circumstances, opinions from state agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources"]; Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984)["[T]he testimony of a non-examining physician can be relied upon when it is consistent with the record"]; see also Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)[court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

**III.**

**(Vocational Expert Testimony)**

Plaintiff's final charge of error is that the ALJ based his finding that Plaintiff could perform gainful work activity with her impairments on an improper hypothetical to the VE which did not include the limitations opined to by Dr. Naylor. However, as previously discussed, the ALJ did not accept Dr. Naylor's findings as to the extent of Plaintiff's mental limitations. Rather, the record reflects that in response to a hypothetical from the ALJ which included all of the limitations *found by the ALJ*, the Vocational Expert at the hearing identified several jobs Plaintiff could perform with those limitations. (R.pp. 48-49). Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate





limitations in concentration, social functioning, and tolerance of stress].

While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable case law. Hence, the hypothetical given by the ALJ to the vocational expert was proper, and the undersigned finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991))[ALJ not required to include limitations or restrictions in his hypothetical question that he finds are not supported by the record]; see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

**Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the twenty (20) day time period at issue. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.





The parties are referred to the notice page attached hereto.

Bristow Marchant
United States Magistrate Judge

June 9, 2014
Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



